FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 08, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

JUSTIN B.,

                        Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

                        Defendant.

NO:  1:19-CV-03150-FVS

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

---

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 14 and 16.  This matter was submitted for consideration without oral argument.  The Plaintiff is represented by Attorney D. James Tree.  The Defendant is represented by Special Assistant United States Attorney Benjamin J. Groebner.  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed.  For the reasons discussed below, the court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 14, and **DENIES** Defendant's Motion for Summary Judgment, ECF No. 16.

ORDER ~ 1

**JURISDICTION**

Plaintiff Justin B. protectively filed for supplemental security income on May 26, 2009, alleging an onset date of May 1, 2008. Tr. 185-87. Benefits were denied initially, Tr. 93-96, and upon reconsideration, Tr. 97-98. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Marie Palachuk on May 10, 2011. Tr. 55-90. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits, Tr. 19-35, and the Appeals Council denied review. Tr. 1. On August 25, 2013, the United States District Court for the Eastern District of Washington granted Plaintiff's Motion for Summary Judgment, and remanded the case for further proceedings. Tr. 416-39. On April 30, 2014, the Appeals Council vacated the ALJ's finding, and remanded for further administrative proceedings. Tr. 448-51. On February 9, 2016, Plaintiff appeared for an additional hearing before the ALJ. Tr. 369-92. The ALJ denied benefits. Tr. 348-63. On July 14, 2017, the United States District Court for the Eastern District of Washington granted the parties' stipulated motion to remand, and again remanded the case for further proceedings. Tr. 921-35. On September 19, 2017, the Appeals Council vacated the ALJ's finding, and remanded for further administrative proceedings. Tr. 936-41. Plaintiff did not appear for an additional hearing on November 14, 2018, and the ALJ approved the request to treat Plaintiff as a non-essential witness who has constructively waived his right to appear for another hearing. Tr. 842-43, 865-81. On November 27, 2019, the ALJ denied

ORDER ~ 2

benefits.  Tr. 839-864.  The matter is now before this court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 34 years old at the time of the first hearing.  *See* Tr. 84.  He testified that he "didn't pass" the ninth grade, and "can barely read."  Tr. 70.  At the time of the first hearing, Plaintiff lived with his girlfriend.  Tr. 78.  He has work history as a construction worker, sandwich maker, and industrial cleaner.  Tr. 84. Plaintiff testified that he could "try" working but "it hasn't worked in the past" because there are many days when he cannot get out of bed and cannot be around people.  Tr. 80-81.

Plaintiff reported that he argues with someone "pretty much every single time [he goes] into public," spends most of the summer in the mountains by himself, and has trouble dealing with authority figures.  Tr. 73-76, 80-81.  He has difficulties with concentration and staying focused, and he cannot remember dates and numbers.  Tr. 78-79.  At the time of the second hearing, Plaintiff was in jail for second degree assault, and he reported multiple other instances where he physically assaulted people due to "anxiety."  Tr. 379-82.

ORDER ~ 3

1

## STANDARD OF REVIEW

2      A district court's review of a final decision of the Commissioner of Social

3   Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

4   limited; the Commissioner's decision will be disturbed "only if it is not supported

5   by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

6   1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

7   reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

8   (quotation and citation omitted).  Stated differently, substantial evidence equates to

9   "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

10   citation omitted).  In determining whether the standard has been satisfied, a

11   reviewing court must consider the entire record as a whole rather than searching

12   for supporting evidence in isolation.  *Id.*

13      In reviewing a denial of benefits, a district court may not substitute its

14   judgment for that of the Commissioner.  If the evidence in the record "is

15   susceptible to more than one rational interpretation, [the court] must uphold the

16   ALJ's findings if they are supported by inferences reasonably drawn from the

17   record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

18   court "may not reverse an ALJ's decision on account of an error that is harmless."

19   *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate

20   nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The

21

ORDER ~ 4

party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the

ORDER ~ 5

1   claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

2   "any impairment or combination of impairments which significantly limits [his or

3   her] physical or mental ability to do basic work activities," the analysis proceeds to

4   step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

5   this severity threshold, however, the Commissioner must find that the claimant is

6   not disabled.  20 C.F.R. § 416.920(c).

7        At step three, the Commissioner compares the claimant's impairment to

8   severe impairments recognized by the Commissioner to be so severe as to preclude

9   a person from engaging in substantial gainful activity.  20 C.F.R. §

10  416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

11  enumerated impairments, the Commissioner must find the claimant disabled and

12  award benefits.  20 C.F.R. § 416.920(d).

13       If the severity of the claimant's impairment does not meet or exceed the

14  severity of the enumerated impairments, the Commissioner must pause to assess

15  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

16  defined generally as the claimant's ability to perform physical and mental work

17  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

18  416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

19       At step four, the Commissioner considers whether, in view of the claimant's

20  RFC, the claimant is capable of performing work that he or she has performed in

21  the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

ORDER ~ 6

capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 26, 2009, the application date.  Tr. 845.  At step two, the ALJ

ORDER ~ 7

found Plaintiff has the following severe impairments: depressive disorder(s), anxiety disorder(s) (including post-traumatic stress disorder), personality disorder(s), borderline intellectual functioning, and substance use disorder(s).  Tr. 845.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 845.  The ALJ then found that Plaintiff has the RFC

> to perform a full range of work at all exertional levels.  He is limited to jobs with a specific vocational preparation (SVP) of two or less, with simple work-related decisions and few workplace changes.  He should not have public contact.  He should only have incidental contact with coworkers.  He can work in proximity to coworkers but without any requirement for tandem tasks.  He should only have occasional supervision as needed.  He will be off-task up to ten [percent] of his workday.

Tr. 847.  At step four, the ALJ found that Plaintiff cannot perform past relevant work.  Tr. 854.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: automobile detailer, industrial cleaner, and kitchen helper.  Tr. 855.  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since May 26, 2009, the date the application was filed.  Tr. 855.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 14.  Plaintiff raises the following issues for this Court's review:

ORDER ~ 8

1    1.  Whether the ALJ properly weighed the medical opinion evidence; and

2    2.  Whether the ALJ improperly discredited Plaintiff's symptom claims.

3                                    **DISCUSSION**

4    **A. Medical Opinions**

5        There are three types of physicians: "(1) those who treat the claimant

6    (treating physicians); (2) those who examine but do not treat the claimant

7    (examining physicians); and (3) those who neither examine nor treat the claimant

8    [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

9    *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted).

10   Generally, a treating physician's opinion carries more weight than an examining

11   physician's, and an examining physician's opinion carries more weight than a

12   reviewing physician's.  *Id.*  If a treating or examining physician's opinion is

13   uncontradicted, the ALJ may reject it only by offering "clear and convincing

14   reasons that are supported by substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d

15   1211, 1216 (9th Cir.2005).  Conversely, "[i]f a treating or examining doctor's

16   opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

17   providing specific and legitimate reasons that are supported by substantial

18   evidence."  *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

19   "However, the ALJ need not accept the opinion of any physician, including a

20   treating physician, if that opinion is brief, conclusory and inadequately supported

21

ORDER ~ 9

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources.  20 C.F.R. § 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion.  *Molina*, 674 F.3d at 1111.  However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

Plaintiff argues that the ALJ erroneously considered the opinions of testifying medical expert Dr. W. Scott Mabee, Ph.D., examining psychologist Philip G. Barnard, Ph.D., examining psychologist Emma J. Billings, Ph.D., treating social worker Russell Anderson, MSW, and reviewing psychologist Steven Johansen, Ph.D.  ECF No. 14 at 6-16.

### 1. Dr. W. Scott Mabee

In May 2011, Dr. Mabee testified that Plaintiff had moderate limitations in the ability to understand and remember detailed instructions; maintain concentration, persistence, and pace; and deal with supervisors.  Tr. 65.  He further opined that "[g]enerally [Plaintiff's] capacities remain within more simple, routine

ORDER ~ 10

tasks away from others in which work could be carried out," and "a more isolated environment would be a better fit for [Plaintiff]." Tr. 65. The ALJ gave "some weight" to Dr. Mabee's opinion, and "incorporate[d] this testimony with the [Plaintiff's] overall evidence by finding he is capable of unskilled employment with simple work-related decisions, few workplace changes, no public contact, and no teamwork with coworkers. He should only have occasional supervision as needed. He will be off-task up to ten percent of his workday." Tr. 853.

Plaintiff argues that the ALJ assigned "some weight" to Dr. Mabee's opinion, "which was the greatest weight given to any source in this record," but failed to "account for" testimony from Dr. Mabee as follows:

**Plaintiff Attorney**: In Dr. Billings' note she said that as far as social interaction [Plaintiff is] a high defensive and argumentative, likely to respond aggressively if perceived himself criticized. Would you agree with that statement?

**Dr. Mabee**: Yes – that social interactions are his primary area of limitation.

**Plaintiff Attorney**: Yeah. And then her opinion that he's likely to continue to have short-term labor positions. She'd noted that he's had those type of jobs in the past and lost them due to conflicts. That was her in - - conclusion. Do you agree with that opinion?

**Dr. Mabee**: That sustaining is likely to be a problem because of the social [] skills – yes.

**Plaintiff Attorney**: Okay. All right. Now in your opinion you'd said that he's going to have also marked difficulties with regularity of work behavior, attendance – things like that. Were you – I guess I didn't get it. What exactly were you saying there – he'd have a moderate limitation in number – like number 7 – ability to perform activities within a schedule, maintain regular attendance, and be punctual [] within customary tolerances?

ORDER ~ 11

**Dr. Mabee**: 7 probably as well as 11, in terms of being able to sustain work on a regular basis – and that goes to the comment that you just made previously in terms of short-term types of jobs – has the capacity to handle those but sustaining work would be more difficult.

Tr. 67-68.

Here, the ALJ generally purported to incorporate Dr. Mabee's "testimony" into the RFC by finding Plaintiff was capable of simple work-related decisions, few workplace changes, no public contact, no teamwork with coworkers, occasional supervision as needed, and he would be offtask up to ten percent of his workday. Tr. 853. Defendant argues the ALJ properly relied on Dr. Mabee's testimony earlier in the hearing that (1) Plaintiff had "at least moderate" limitations in "regularity of work behavior," and moderate limitations in social functioning, and (2) "the ability to not manifest behavioral experience such as anger would likely be seen." Tr. 65. In support of this argument, Defendant cited an unpublished 2016 case to support the contention that the "ALJ was entitled to rely on Dr. Mabee's specific testimony about how [Plaintiff's] moderate limitations would affect his social functioning over his more general testimony about the ability to sustain work." ECF No. 16 at 4 (citing *Cobb v. Colvin*, No. 16-05112, 2016 WL 3856144, at *4 (W.D. Wash. July 15, 2016) (ALJ properly relied on the "functional assessment over a less specific finding" that it was "unlikely that [Plaintiff] would be able to sustain her employment"). Thus, according to

ORDER ~ 12

Defendant, the "ALJ rationally incorporated Dr. Mabee's opinion into the RFC finding."  ECF No. 16 at 4.

"[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin*., 807 F.3d 996, 1006 (9th Cir. 2015); *see also Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1271, 1223 (9th Cir. 2010)  (an ALJ's findings need only be consistent with a physician's credited limitations, not identical to them).  However, while it is true that the ALJ is not bound to adopt, verbatim, the opinions of a medical source, the ALJ is nevertheless required to explain why any conflicting opinions have not been adopted, and here, despite Dr. Mabee's testimony that Plaintiff's "social interactions are his primary area of limitations," the ALJ failed to discuss Dr. Mabee's apparent agreement with Dr. Billings' examining opinion that Plaintiff would "likely" continue to have short term labor positions, was "likely" to respond aggressively if perceived himself criticized, and had moderate to marked difficulties in his ability to maintain regular attendance and perform activities within a schedule.  Tr. 67-68. Moreover, as noted by Plaintiff, the case law cited by Defendant is distinguishable from the instant case because the testimony by Dr. Mabee that was not considered by the ALJ included specific opinions regarding Plaintiff's ability to sustain work over time and respond to criticism, as opposed to a general finding about Plaintiff's ability to work.  ECF No. 17 at 1-2.  Thus, "[f]or the ALJ to state Dr. Mabee's

testimony was incorporated into forming the RFC but then to ignore such relevant [] limitations," without explanation provided to justify the omission, was error. ECF No. 17 at 2; *see* SSR 96-8p, 1996 WL 374184 at *7 (Jul. 2, 1996).

The Court finds the ALJ erred by failing by either providing the requisite reasons to reject Dr. Mabee's testimony as to Plaintiff's social limitations and ability to sustain work, or to specifically consider those limitation in formulating the assessed RFC. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (failure to address medical opinion was reversible error). Moreover, the Court notes that the ALJ accorded "some" weight to Dr. Mabee's opinion, but simultaneously noted that "Dr. Mabee's testimony in May 2011 was not particularly useful for determining a residual functional capacity." Tr. 853. The ALJ does not elaborate as to what portion of Dr. Mabee's opinion is "not particularly useful"; thus, the Court is left to speculate as to whether some portion of Dr. Mabee's testimony was rejected as "not useful" without sufficient explanation. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").

ORDER ~ 14

Finally, the record, as it stands, does not permit the Court to conclude that the error is harmless. *See Molina*, 674 F.3d at 1115 (error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."). Because the hypothetical RFC posed to the vocational expert may not accurately reflect all of Plaintiff's limitations, the expert's testimony has no evidentiary value to support the ALJ's step five finding that plaintiff can perform jobs in the national economy. *Robbins*, 466 F.3d at 886. Accordingly, the ALJ's step five determination is unsupported by substantial evidence. Because the ALJ erred by failing to properly consider the entirety of Dr. Mabee's testimony as to Plaintiff's social limitations and ability to sustain work, the opinion must be reconsidered on remand, along with the subsequent steps of the sequential analysis.

### 2. *Dr. Philip G. Barnard and Dr. Steven Johansen*

In June 2014, Dr. Barnard examined Plaintiff and opined that he had marked limitations in his ability to understand, remember, and persist in tasks by following detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; and complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 751. Dr. Johansen reviewed Dr. Barnard's opinion and concurred that the severity and functional limitations opined by Dr. Barnard were supported by available medical

ORDER ~ 15

evidence. Tr. 755. The ALJ gave "minimal" weight to the opinions of Dr. Barnard and Dr. Johansen for several reasons. Tr. 853-54. The ALJ and the parties considered these opinions jointly when appropriate; thus, the Court will do the same.

First, the ALJ found that Dr. Barnard "did not give adequate explanation for his multifaceted opinions of psychological disability." Tr. 853. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). In support of this finding the ALJ noted that in the section of his opinion entitled "clinical findings," Dr. Barnard wrote that Plaintiff's "anxiety would affect his ability to work on a daily basis to a mild extent." Tr. 750. Plaintiff argues this reason was improper because the "clinical findings" section was only "one portion of his 5-page report, which also included a full clinical interview, diagnostic section, medical source statement, and mental status exam. . . . Dr. Barnard therefore had numerous positive objective findings to make a professional judgment of [Plaintiff's] functional limitations." ECF No. 14 at 9 (citing Tr. 749-53). The Court agrees. While Defendant is correct that the ALJ is "entitled to consider Dr. Barnard's own explanation for his opinion" when weighing an opinion, the ALJ must do more than state a conclusion. Rather, the

ORDER ~ 16

ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*. Here, the ALJ fails to summarize and interpret the entirety of Dr. Barnard's evaluation; thus, the ALJ's conclusion that Dr. Barnard failed to give adequate explanation for his opinion is not supported by substantial evidence. This was not a specific and legitimate reason for the ALJ to reject Dr. Barnard's opinion.

Second, the ALJ noted that Dr. Barnard "referred [Plaintiff] to vocational rehabilitation services. This indicates Dr. Barnard did not actually believe [Plaintiff] was precluded from work activity and that he gave undue credence to an alleged spinal impairment in regards to [Plaintiff's] occupational functioning." Tr. 853. However, as noted by Plaintiff, Dr. Barnard referred Plaintiff for further evaluation of his claimed physical impairment only; thus, the Court is unable to perceive any inconsistency between the ALJ's referral to consider "the extent of [Plaintiff's] back injury" and the marked mental limitations assessed by Dr. Barnard. ECF No. 14 at 10. Further, while it is well-settled in the Ninth Circuit that the ALJ may "draw inferences logically flowing from evidence," the Court finds it was not reasonable for the ALJ to infer that Dr. Barnard's referral to an orthopedic physician and to DVR services "indicate[d] [he] did not actually believe

ORDER ~ 17

[Plaintiff] was precluded from work activity." *Tommasetti,* 533 F.3d at 1040 (ALJ may draw inferences logically flowing from evidence); *Magallanes v. Bowen,* 881 F.2d 747, 755 (9th Cir. 1989).  The ALJ did not point to, nor does the Court discern, any evidence that would support a finding that Dr. Barnard "did not actually believe" that Plaintiff was unable to work.  Thus, this was not a specific and legitimate reason, supported by substantial evidence, for the ALJ to reject Dr. Barnard's opined mental health limitations.

Third, the ALJ found the "longitud[inal] objective evidence otherwise undermines the opinions of Dr. Barnard." Tr. 853.  In support of this finding, the ALJ first noted that during his evaluation with Dr. Barnard, Plaintiff said his mood was "decent" and he displayed appropriate affect, cooperative behavior, and normal speech.  Tr. 853.  The ALJ also acknowledged that Plaintiff exhibited impaired thought process, impaired memory, impaired judgement, and impaired concentration, but found that "[a]lthough these findings support some of Dr. Barnard's opinions, they are contrary to any significant deficits in [Plaintiff's] behavior or emotional responses." Tr. 853-54.  Finally, the ALJ found the limitations assessed by Dr. Barnard are "inconsistent with [Plaintiff's] longitudinal presentation in treatment settings, which have found unimpaired thought process, unimpaired memory, unimpaired judgment, and unimpaired concentration." Tr. 854.  An ALJ may properly reject a medical opinion if it is inconsistent with the provider's own treatment notes.  See *Tommasetti v. Astrue*, 533 F.3d 1035, 1041

ORDER ~ 18

1   (9th Cir. 2008). In addition, the consistency of a medical opinion with the record

2   as a whole is a relevant factor in evaluating that medical opinion. *See Orn*, 495

3   F.3d at 631; *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir.

4   2004) (ALJ may discount an opinion that is conclusory, brief, and unsupported by

5   the record as a whole, or by objective medical findings).

6           However, as noted above, when explaining his reasons for rejecting medical

7   opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ

8   must "set forth his own interpretations and explain why they, rather than the

9   doctors', are correct." *Reddick*, 157 F.3d at 725. "This can be done by setting out

10  a detailed and thorough summary of the facts and conflicting clinical evidence,

11  stating his interpretation thereof, and making findings." *Id*. Here, the ALJ fails to

12  explain how or why the largely abnormal mental status examination findings by

13  Dr. Barnard are "contrary to significant deficits in [Plaintiff's] behavior or

14  emotional response." Tr. 853-54. As noted by Plaintiff, Dr. Barnard found

15  Plaintiff was unkempt and disheveled, his personal hygiene was "not particularly

16  adequate," he indicated his mood was "decent" but also indicated he was

17  depressed, he exhibited concrete thinking, he did not know the day of the month or

18  the month, he was not able to do serial 7's, he recalled one word out of three after

19  five minute time delay, he could not spell "world" backwards, he had abnormal

20  abstract thought, and abnormal insight and judgment. Tr. 752-53. Furthermore,

21  while the ALJ string-cited records in support of his finding that the marked

ORDER ~ 19

limitations were inconsistent with Plaintiff's "longitudinal presentation in treatment settings, "most of the examples the ALJ used were only the brief screening devices used during inmate intake and not full psychological exams of the sort Dr. Barnard was conducting. Moreover, many of the places the ALJ cited to included numerous positive findings the ALJ ignored." ECF No. 14 at 12; Tr. 251-52 (Plaintiff is "agitated and angry but cooperative and trying to control himself," has agitated mood and body movement, reports visual disturbance and ideas of hopelessness, and impaired memory and cognition), 655-56, 665 ("openly admits he is antisocial and states that he really just doesn't like being around people"), 2153 (Plaintiff is agitated and has poor insight), 2195-96, 2233 (inmate intake screening), 2264 (inmate intake screening included recommended referral to mental health), 2295-96 (inmate intake screening), 2310 (inmate intake screening), 2325 (inmate intake screening), 2348 (reports restless sleep, appears irritated, and his case was closed due to his failure to show up for treatment). Finally, as noted by Plaintiff, records throughout the longitudinal record include findings that Plaintiff was angry, anxious, agitated, uncooperative, argumentative, irritable, and had poor insight and judgment. ECF No. 14 at 12.

Based on the foregoing, the Court finds the ALJ failed to explain with requisite specificity why or how Dr. Barnard's largely abnormal mental status examination findings, and the overall longitudinal record indicating that Plaintiff often presented as agitated and angry, was inconsistent with Dr. Barnard's opinion.

ORDER ~ 20

Thus, these were not specific and legitimate reasons, supported by substantial evidence, for the ALJ to reject Dr. Barnard's opinion.  *See Brown-Hunter*, 806 F.3d at 492 ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review").

Fourth, the ALJ found Dr. Barnard's opinion is "inconsistent with [Plaintiff's] activities since his application date, such as working for a building siding company and repairing bicycles for pay."  Tr. 854 (citing Tr. 323, 671).  An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning.  *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  In addition, employment "during any period" of claimed disability may be probative of a claimant's ability to work at the substantial gainful activity level.  *See* 20 C.F.R. § 404.1571.  However, "occasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability."  *Lester*, 81 F.3d at 833); *see also Lingenfelter*, 504 F.3d at 1038 ("It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed,* that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment.").  Here, the only evidence cited by the ALJ in support of this finding was a single report by Plaintiff that he was "last employed in the summer of 2010 for one month," and another report by Plaintiff that he got paid by a couple of people for "fixing their bicycles" but was immediately stopped by his landlord.  Tr. 323, 671.

ORDER ~ 21

The Court finds two reports of "activities," lasting one month and one day, respectively, is not a specific and legitimate reason, supported by substantial evidence, for the ALJ to reject Dr. Barnard's opinion.

Finally, the ALJ found Dr. Barnard and Dr. Johansen were "not given accurate information on [Plaintiff's] actual psychological state" because Plaintiff claimed he was sober during Dr. Barnard's evaluation, and "[b]ased on this reporting, Dr. Barnard and Dr. Johansen both erroneously concluded that [Plaintiff] did not have a substance use disorder." Tr. 854. In support of this finding, the ALJ cited evidence throughout the record, mostly comprised of Plaintiff's self-report, of long-term marijuana and methamphetamine use. Tr. 250, 487-88, 741 (positive test for methamphetamine), 838, 2207 (reported using meth for last 33 years), 2291, 2301. However, Plaintiff reported to Dr. Barnard that he began using alcohol at age 8, was a regular user of marijuana and methamphetamine until the age of 35, and underwent both inpatient and outpatient treatment programs. Tr. 749. Plaintiff also reported he was not using any substances at the time of the evaluation with Dr. Barnard. Tr. 749. Presumably based on these reports and the overall evaluation of Plaintiff, Dr. Barnard found Plaintiff's impairments were not the result of drug or alcohol use within the past 60 days, and Dr. Johansen noted that "based on current evidence there is insufficient documentation to support a primary substance abuse impairment." Tr. 755.

ORDER ~ 22

1    The consistency of a medical opinion with the record as a whole is a relevant

2  factor in evaluating that medical opinion.  *See Orn*, 495 F.3d at 631.  However, the

3  ALJ fails to explain how Dr. Barnard and Dr. Johansen were "erroneous" in their

4  conclusion that Plaintiff did not have a substance use disorder within 60 days of

5  their evaluations; nor does the ALJ cite to any specific inconsistency between the

6  overall record and Plaintiff's report to Dr. Barnard that he was a regular user of

7  methamphetamine and marijuana, but was not using substances at the time of the

8  evaluation.  *See Reddick*, 157 F.3d at 725 (the ALJ must "set forth his own

9  interpretations and explain why they, rather than the doctors', are correct.").  Thus,

10  because the ALJ failed to explain why or how Dr. Barnard and Dr. Johansen's

11  awareness of Plaintiff's history of substance use specifically undermines their

12  opinions, this was not a not specific, legitimate reason, supported by substantial

13  evidence, to reject Dr. Barnard and Dr. Johansen's opinions.

### 3.  *Dr. Emma J. Billings, Ph.D. and Russell Anderson, MSW*

15    The ALJ briefly found that "[b]ased on [his] review of the updated

16  evidentiary record, [he] continued to give little weight to the opinions of Dr.

17  Billings [and] Mr. Anderson." Tr. 852.  As an initial matter, the Court notes that in

18  the ALJ entirely fails to summarize of the the specific limitations opined by Dr.

19  Billings and Mr. Anderson.  For instance, in December 2010 Dr. Billings opined

20  that Plaintiff would be unable to read any written instructions or provide any type

21  of written report, his social interaction is "highly defensive and argumentative," he

ORDER ~ 23

"is likely to respond aggressively if he perceives himself to be criticized," and he is likely to continue to have short term labor positions due to his skill level and personality difficulties.  Tr. 322-30.  The ALJ generally rejected Dr. Billings' opinion because (1) Plaintiff's self-reporting of substance use to Dr. Billings was "vague and inconsistent with other evidence"[1]; (2) Plaintiff's performance with cognitive testing with Dr. Billings was "highly questionable, particularly in light of his unimpaired cognition in treatment settings"; and (3) Plaintiff's "recent work activity as reported to Dr. Billings, along with his TOMM results, further indicate a lack of reliability in [Plaintiff's] performance with Dr. Billings' other psychometric testing."  Tr. 852.

---

[1] The ALJ specifically notes that this issue was "already discussed" in ALJ Gordon W. Griggs' decision from June 2015.  Tr. 852, 891.  Plaintiff argues "the ALJ violated the law of the case in giving the opinion less weight because [Plaintiff] was not deemed sufficiently forthcoming about his substance use.  The federal court ruled 'substantial evidence does not support the ALJ's finding.  There is simply no evidence in this record to deduce that Plaintiff intended to deceive Dr. Billings.'"  ECF No. 14 at 14 (citing Tr. 429).  In light of the need to remand for reconsideration of all the relevant medical opinion evidence, it is unnecessary for the Court to address this issue.

ORDER ~ 24

1      The consistency of a medical opinion with the record as a whole is a relevant

2 factor in evaluating that medical opinion. *See Orn*, 495 F.3d at 631; *see also*

3 *Morgan,* 69 F.3d at 601-02 (ALJ may discount an opinion that is inconsistent with

4 a claimant's reported functioning). However, as above, the ALJ must do more

5 than state a conclusion; rather, the ALJ must "set forth his own interpretations and

6 explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725

7 ("This can be done by setting out a detailed and thorough summary of the facts and

8 conflicting clinical evidence, stating his interpretation thereof, and making

9 findings.").

10     As an initial matter, the ALJ entirely fails to summarize and interpret Dr.

11 Billings' clinical findings and objective testing conducted as part of her analysis,

12 nor does he state any interpretation of those findings; thus, the ALJ's cursory

13 rejection of Dr. Billings' opinion is not supported by substantial evidence.[2] As

14

15 [2] Defendant offers extensive evidence from the record in support of the reasons

16 given by the ALJ for discounting Dr. Billings' opinion. ECF No. 16 at 6-13.

17 However, the Court is not permitted to consider reasoning that was not offered by

18 the ALJ in the decision. *See Bray*, 554 F.3d at 1226 (the Court "review[s] the

19 ALJ's decision based on the reasoning and factual findings offered by the ALJ—

20 not *post hoc* rationalizations that attempt to intuit what the adjudicator may have

21 been thinking.").

ORDER ~ 25

noted by Plaintiff, Dr. Billings conducted extensive objective testing and a mental status examination as part of her assessment, which included findings that Plaintiff was generally cooperative but highly argumentative; he had anxious affect, low average range of fund of information, responses were not reflective of meanings of proverbs, average memory; and he scored in the "borderline" category for intellectual functioning.  ECF No. 14 at 14-15, 325-30.  Because the ALJ failed to explain why or how an alleged "unreliability" in Plaintiff's performance during his evaluation with Dr. Billings undermines her opinion as to his cognitive and social limitations, this was not a not specific, legitimate reason, supported by substantial evidence, to reject Dr. Billings' opinion.  On remand, Dr. Billings' opinion must be reconsidered, and because, as noted by Plaintiff, his "primary disabling limitation was related to his social interactions, which has no bearing on his cognition," the ALJ should particularly reconsider the social limitations assessed by Dr. Billings. *See* ECF No. 14 at 14.

Finally, in March 2009, Mr. Anderson assessed marked limitations in Plaintiff's ability to understand, remember and follow complex instructions; learn new tasks; exercise judgment and make decisions; relate appropriately to co-workers and supervisors; respond appropriately to and tolerate the pressure and expectations of a normal work setting; and control physical or motor movements ad maintain appropriate behavior.  Tr. 242-47.  The ALJ rejected his opinion because "[a]lthough [Plaintiff] displayed impairment in his judgment, thought

ORDER ~ 26

process, cognition, and concentration during [Mr.] Anderson's state agency evaluation shortly before his application date, examinations in subsequent treatment settings have found unimpaired judgment, cognition, and concentration." Tr. 852.  In support of this finding, the ALJ relied on four treatment records from the adjudicatory period indicating "fair" to good judgment, no impairment of intellectual functioning, normal concentration, and intact thought process. Tr. 852 (citing Tr. 251-52, 655, 666, 2153-54).

However, the Court's review of the same treatment records cited by the ALJ in support of this finding also include Plaintiff's consistent reports that he is antisocial and has thoughts of harming others; and treatment notes indicating that he is nervous, guarded, agitated in mood and body movement, has poor insight, and reported visual hallucinations.  Tr. 251-52, 653-55, 665, 2153.  Moreover, as above, the ALJ appears to rely entirely on evidence of "unimpaired" cognitive functioning, and fails to consider the marked social limitations opined by Mr. Anderson. *Reddick*, 157 F.3d at 725.  For all of these reasons, the ALJ's cursory rejection of Mr. Anderson's opinion because it was inconsistent with "subsequent" examinations of Plaintiff was not a specific and legitimate reason, supported by substantial evidence, and his opinion must be reconsidered on remand, with

particular consideration of the marked social limitations assessed by Mr.

Anderson.[3]

**B.  Plaintiff's Symptom Claims**

_____

[3] The ALJ also generally noted that Mr. Anderson "did not account for" Plaintiff's

substance use disorder.  Tr. 853.  Mr. Anderson noted no indication of alcohol or

drug use at the time of his evaluation, and no diagnosed conditions caused by past

or present alcohol or drug use; but he did consider a history of substance abuse and

Plaintiff's report that he had been clean for two years at the time of the 2009

assessment.  Tr. 243.  Defendant argues the "record is replete with instances where

[Plaintiff's] denial of drug use to a provider was inconsistent with his admission of

use to another provider."  ECF No. 16 at 17.  However, the ALJ did not offer

specific evidence that Plaintiff misrepresented his substance use to Mr. Anderson;

nor does the ALJ indicate how Mr. Anderson "did not account for" the effect of a

"substance use disorder."  _See Brown-Hunter v. Colvin_, 806 F.3d 487, 492 (9th Cir.

2015) ("the agency [must] set forth the reasoning behind its decisions in a way that

allows for meaningful review").  Thus, to the extent that an alleged failure to

consider Plaintiff's substance use was offered as a reason to reject Mr. Anderson's

opinion, the Court finds it was not specific, legitimate, and supported by

substantial evidence.

ORDER ~ 28

1    Plaintiff also challenges the ALJ's consideration of Plaintiff's symptom

2  claims.  ECF No. 14 at 16-23.  Specifically, Plaintiff alleges that the ALJ erred by

3  rejecting Plaintiff's symptom claims because (1) "inconsistencies in [Plaintiff's]

4  testing and [sic] finding indicates a lack of reliability"; (2) "[h]is minimal pursuit

5  of health care is otherwise inconsistent with his reported degree of psychological

6  impairment, to a degree that severely undermines his allegations of disability"; (3)

7  Plaintiff has continued to exhibit "generally normal" psychological functioning in

8  treatment settings; (4) the record includes inconsistent reports of substance use;

9  and (5) work history and activities are "inconsistent with the severe behavioral and

10  cognitive issues he has alleged during his hearings."  Tr. 848-52.  Thus, because

11  the analysis of Plaintiff's symptom claims is in large part dependent on the ALJ's

12  reconsideration of the medical evidence on remand, including Mr. Anderson's

13  opinion that Plaintiff's fear of treatment might impair Plaintiff's ability to

14  cooperate with treatment, and Dr. Barnard's note that Plaintiff refused to go to

15  Comprehensive Mental Health after experiencing an alleged bad reaction to

16  medication, the Court declines to address Plaintiff's challenges in detail here.  Tr.

17  245, 749; *See Nguyen*, 100 F.3d at 1465 (where the evidence suggests lack of

18  mental health treatment is part of a claimant's mental health condition, it may be

19  inappropriate to consider a claimant's lack of mental health treatment in rejecting

20  Plaintiff's symptom claims).  On remand, the ALJ is instructed to reevaluate

21  Plaintiff's symptom claims and conduct a new sequential analysis.

ORDER ~ 29

# REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]"  *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met).  This policy is based on the "need to expedite disability claims."  *Varney*, 859 F.2d at 1401.  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings

ORDER ~ 30

would serve a useful purpose).  Here, the ALJ improperly considered the medical

opinion evidence, particularly as to Plaintiff's claimed social limitations, which

calls into question whether the assessed RFC, and resulting hypothetical

propounded to the vocational expert, are supported by substantial evidence.

"Where," as here, "there is conflicting evidence, and not all essential factual issues

have been resolved, a remand for an award of benefits is inappropriate." *Treichler*,

775 F.3d at 1101.  Instead, the Court remands this case for further proceedings.  On

remand, the ALJ must reconsider the medical opinion evidence, with specific

consideration of opined social limitations, and provide legally sufficient reasons

for evaluating these opinions, supported by substantial evidence.  If necessary, the

ALJ should order additional consultative examinations and, if appropriate, take

additional testimony from medical experts.  The ALJ should also reconsider

Plaintiff's symptom claims.  Finally, the ALJ should reassess Plaintiff's RFC and,

if necessary, take additional testimony from a vocational expert which includes all

of the limitations credited by the ALJ.

   **ACCORDINGLY, IT IS HEREBY ORDERED:**

   1. Plaintiff's Motion for Summary Judgment, ECF No. 14, is **GRANTED,**

     and the matter is **REMANDED** to the Commissioner for additional

     proceedings consistent with this Order.

///

///

ORDER ~ 31

2.  Defendant's Motion for Summary Judgment, ECF No. 16, is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide

copies to counsel, enter judgment in favor of the Plaintiff, and **CLOSE** the file.

**DATED** July 8, 2020.

Stanley A. Bastian
United States District Judge

ORDER ~ 32